UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                          :
INFINITY CAPITAL LLC, *et al.*,           :
                                          :     Case Nos. 1:18-cv-2422
            Plaintiffs,                   :              1:18-cv-2423
                                          :
vs.                                       :     OPINION & ORDER
                                          :     [Resolving Doc. No. 4, 1:18-cv-2423]
FRANCIS DAVID CORPORATION,                :
                                          :
            Defendant.                    :
                                          :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this business relationship gone bad, Plaintiffs John Paul Golino and his company, Infinity Capital LLC, sue Defendant Francis David Corporation, primarily, for breaching a contract. In turn, Defendant countersues Plaintiffs for breaching the same contract and to recover certain overpayments.[1] Plaintiffs move to dismiss Defendant's counterclaims.

For the following reasons, the Court **DENIES** Plaintiffs' motion to dismiss.

## I. Background

Defendant Francis David Corporation processes credit card payments for merchants.[2] Beginning in 2009, Defendant Francis David Corporation agreed to a contract with Plaintiffs John Paul Golino and Infinity Capital LLC for Golino and Infinity to solicit merchants for Defendant's services.[3] In return, Francis David agreed to pay a percentage of the revenue those merchants generated (the "Residual").[4]

---

[1] In fact, Francis David Corporation filed their claims against Infinity Capital and Golino in a separate suit. *Francis David Corp. v. Infinity Capital LLC*, No. 1:18-cv-2423 (N.D. Ohio Oct. 18, 2018). However, given the obvious overlap, the Court consolidated that case with this earlier-filed case. Doc. 13. Accordingly, the Court construes Francis David Corporation's claims filed in the companion case as counterclaims in this case.
[2] Doc. 1 ¶ 6.
[3] *Id.* ¶ 19.
[4] *Id.* ¶ 19–20.

Case No. 1:18-cv-2422
Gwin, J.

In February 2016, Plaintiffs and Defendant entered the "Amended and Restated Agent Processing Agreement" (the "Amended Agreement").[5] Central to this case, the Amended Agreement continued a non-solicitation provision that the parties had reached in a 2010 Agreement. The Amended Agreement arguably made major changes to the 2010 Agreement. While the 2010 Agreement had an exclusive agency requirement; the Amended Agreement allowed Plaintiffs to sell similar services for others.[6]

Shortly after entering the Amended Agreement, Plaintiffs began offering processing services of their own.[7] This included offering services to some of Defendant's merchants.[8] Plaintiffs allege that they only offered *secondary* services, meaning Plaintiffs only processed those transactions Defendant refused to process.[9]

In 2018, the parties' relationship collapsed. In March 2018, Defendant claimed it had accidentally overpaid $250,000 of Residual payments.[10] Consequently, and over Plaintiffs' protests, Defendant began unilaterally deducting the Residual to cover the overpayment.[11]

Then, in September 2018, Defendant ended the Amended Agreement.[12] It had learned of Plaintiffs' competing services and claimed they violated the non-solicitation provision. Plaintiffs argued—to no avail—that, because they were only offering *secondary* services, they had followed the Amended Agreement.

---

[5] *Id.* ¶ 40.
[6] Doc. 1-3 at 1.
[7] *See* Doc. 1 ¶¶ 40–51.
[8] *See id.* ¶¶ 42, 49.
[9] *See id.* Defendant disputes this. Defendant's Opposition at 8, No. 1:18-cv-2423 (N.D. Ohio Nov. 21, 2018), ECF No. 11.
[10] Doc. 1 ¶ 55.
[11] *Id.* ¶ 74–76.
[12] *Id.* ¶ 93.

Case No. 1:18-cv-2422
Gwin, J.

Under the Amended Agreement, Defendant needed to continue millions of dollars of Residual payments for the accounts that Plaintiffs brought to Defendant. In ending its contract, Defendant claimed it could avoid paying the Residual, which otherwise would have survived the Amended Agreement.[13]

In October 2018, Plaintiffs brought this suit, asking the Court to, *inter alia*, endorse their contractual understanding, restore past and future Residual payments, and award damages.[14] Conversely, Defendant asks the Court to endorse its contractual understanding and require Plaintiffs to repay the remaining overpayments.[15] Plaintiffs now move to dismiss Defendant's counterclaims.[16]

## II. Discussion

The Court dismisses a complaint if it fails to state a claim upon which relief can be granted.[17] To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face."[18] The Court construes the complaint in the light most favorable to the complaining party, accepting well-pleaded factual allegations as true.[19]

### A. Counts I–IV State Valid Claims

Defendant claims that Plaintiffs' processing services violated the Amended Agreement's non-solicitation provision.[20] Conversely, Plaintiffs argue that they did not violate the non-solicitation provision and ask the Court to dismiss Defendant's claims.[21]

---

[13] *Id.* ¶ 94; Doc. 1-3 at 2.
[14] Doc. 1.
[15] Complaint, *Francis David Corp. v. Infinity Capital LLC*, No. 1:18-cv-2423 (N.D. Ohio Oct. 18, 2018), ECF No. 1.
[16] Motion to Dismiss, No. 1:18-cv-2423 (N.D. Ohio Oct. 22, 2018), ECF No. 4. Defendant opposes. Brief in Opposition, No. 1:18-cv-2423 (N.D. Ohio Nov. 21, 2018), ECF No. 11. Plaintiffs reply. Doc. 18.
[17] Fed. R. Civ. P. 12(b)(6).
[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[19] *E.g., Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951 (6th Cir. 2018).
[20] Complaint, No. 1:18-cv-2423 (N.D. Ohio Oct. 18, 2018), ECF No. 1-1.
[21] Motion to Dismiss, No. 1:18-cv-2423 (N.D. Ohio Oct. 22, 2018), ECF No. 4.

Case No. 1:18-cv-2422
Gwin, J.

The vitality of Defendant's first four counterclaims hinges on the non-solicitation provision's meaning. Regrettably, the provision is hardly a model of clarity. The confusion stems from the overlapping and potentially conflicting provision clauses.

The first clause states that Plaintiffs cannot "Solicit any [of Defendant's] Merchants for any purpose other than training and support for [Defendant's] Merchant Processing Services."[22] The second clause says that Plaintiffs cannot "Solicit or attempt to Solicit any [of Defendant's] Merchants to reduce or discontinue their Merchant Processing Services relationship with [Defendant]."[23] The Amended Agreement defines "Solicit" as, *inter alia*, "to make contact."[24]

Facially, the first clause prohibited Plaintiffs' secondary services—they contacted Defendant's merchants for purposes other than training or support. However, if read as a complete prohibition, the second clause becomes surplusage.

As important, the parties' bargaining history suggests the parties intended that the first clause not subsume the second clause. The parties originally entered an agency agreement in 2009 and entered a second agreement in 2010.[25] Under the 2010 Agreement, Plaintiffs marketed merchant payment processing services exclusively for Defendant.[26] In addition, Defendant had a right of first refusal for any eligible merchant Plaintiffs found.[27]

In February 2016, the parties renegotiated the agency agreement.[28] In an important

---

[22] Doc. 1-3 at 1.
[23] *Id.*
[24] *Id.* at 12.
[25] Doc. 1 ¶ 19–20.
[26] *Id.* ¶ 21.
[27] *Id.*
[28] *Id.* ¶ 40.

change, the Defendant released Plaintiffs from the exclusive agency requirement.[29] Defendant also gave up its right of first refusal as to merchants that Plaintiffs secured.[30] And, in another important change from the 2010 agency agreement, the 2016 agency agreement changed the second non-solicitation clause so that it no longer forbade Plaintiff from soliciting any customer to terminate their relationship with Defendant.[31] Instead, the 2016 Amended Agreement's second clause was changed to forbid Plaintiff from soliciting customers to reduce or discontinue their service purchases from Defendant.[32]

The 2016 Amended Agreement changed Plaintiff from being an exclusive sales agent to a non-exclusive sales agent. Because Plaintiff could market other providers' services, the parties changed the second clause to require that Plaintiff not take current customer sales levels away from Defendant.

Defendant used other soliciting agents. Defendant was not restricted to the work Plaintiff brought to Defendant.

Plaintiffs argue that the first clause's generalized prohibition is narrowed by the second clause. Under Plaintiffs' interpretation, Plaintiffs could contact Defendant's merchants so long as they did not harm Defendant's merchant sales levels.

Plaintiffs say their interpretation makes sense with the bargaining history. Before the 2016 changes, Defendants limited the amounts that some of Plaintiffs' customers could process. Plaintiffs contend the second clause intended to allow Plaintiffs to help those customers secure processing for the amounts above the Defendant's limits.

---

[29] *Id.*
[30] *Id.*
[31] *Id.* ¶ 41.
[32] *Id.*

According to Plaintiffs, the 2016 change to the second clause would make no sense if the parties intended to forbid any contact with Defendant's customers.

Thus, the Court is faced with at least two plausible interpretations. The bargaining history supports Plaintiffs' argument that the second clause was changed because the parties agreed Plaintiffs would no longer exclusively represent Defendant and agreed Plaintiff could solicit Defendant's customers but only if those customers kept their Defendant's sales levels.

Defendant apparently drafted the 2016 Agreement.[33] Plaintiffs also argue that any ambiguity in the 2016 Agreement need be construed against the drafter—here Defendant.

But faced with arguably inconsistent contract provisions, the Court is unwilling to wade further through the muddy drafting without more evidence of the parties' intent.[34] The trial is less than two months away and both parties claim course of dealing evidence exists.

Given the contract's facial ambiguity and construing the facts in the light most favorable to Defendant Francis David Corporation, the Court concludes that the bargaining history and contract language changes generally favor Plaintiffs' interpretation. Nonetheless, Defendant states a plausible contract interpretation. Intent and the impact of the parties' bargaining history seem important to interpreting the 2016 Agreement. The Court therefore denies Plaintiffs' motion to dismiss Defendant's first four counterclaims.[35]

---

[33] Motion to Dismiss at 3, No. 1:18-cv-2423 (N.D. Ohio Oct. 22, 2018), ECF. No. 4-1.
[34] See *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (holding that, under Ohio law, if a contract is ambiguous its interpretation becomes a question of fact about the parties' intent).
[35] *Huey Jiuan Liang v. AWG Remarketing*, No. 2:14-cv-99, 2015 WL 65258, at *13 (S.D. Ohio Jan. 5, 2015) (denying a motion to dismiss in part because the contract was facially ambiguous).

Case No. 1:18-cv-2422
Gwin, J.

## B. Count V States A Valid Claim

Defendant claims that it accidentally overpaid the Residual and, accordingly, sues Plaintiffs for unjust enrichment.[36] Plaintiffs move to dismiss this claim.[37] They argue that Defendant's complaint indicates that the parties reached an agreement concerning the overpayments that precludes an unjust enrichment claim.

Plaintiffs read too much from too little. In its complaint, Defendant alleges that Plaintiffs "ha[ve] acknowledged the overpayment [and] ha[ve] agreed to repay it."[38] It does not, however, indicate any details of that agreement.

The Court is unwilling to conclude from this sparse language alone that a repayment contract exists precluding an unjust enrichment claim. Moreover, in their own briefing Plaintiffs appear unwilling to admit such a contract exists.[39]

Reading the facts in the light most favorable to Defendant, it has stated a valid claim for unjust enrichment; the Court denies Plaintiffs' motion to dismiss this counterclaim.

---

[36] Complaint, No. 1:18-cv-2423 (N.D. Ohio Oct. 18, 2018), ECF. No. 1-1.
[37] Defendant claims that Plaintiffs did not move to dismiss this claim. Brief in Opposition at 9–10, No. 1:18-cv-2423, (N.D. Ohio Nov. 21, 2018), ECF. No. 11. Defendant should read dispositive motions more carefully. Quite plainly Plaintiffs move to dismiss the unjust enrichment claim. Motion to Dismiss at 10, No. 1:18-cv-2423 (N.D. Ohio Oct. 22, 2018), ECF. No. 4-1 ("Unjust enrichment is generally precluded where a valid, enforceable contract exists between the parties. Count V should also be dismissed.") (internal citations and quotations omitted).
[38] Complaint ¶ 42, No. 1:18-cv-2423 (N.D. Ohio Oct. 18, 2018), ECF No. 1-1.
[39] Motion to Dismiss at 10, No. 1:18-cv-2423 (N.D. Ohio Oct. 22, 2018), ECF. No. 4-1.

### III. Conclusion

The issues in this case are relatively narrow and trial is imminent. There are significant disputes that call for a full record to resolve.

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to dismiss.

IT IS SO ORDERED.

Dated: January 2, 2019
               *s/  James S. Gwin*
               JAMES S. GWIN
               UNITED STATES DISTRICT JUDGE