UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
INFINITY CAPITAL LLC, *et al.*, :
: Case No. 1:18-cv-2422
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. 64]
FRANCIS DAVID CORPORATION, :
d/b/a ELECTRONIC MERCHANT :
SYSTEMS :
Defendant. :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Francis David Corporation d/b/a Electronic Merchant Systems ("EMS") argues that the amount of damages the Court awarded following a breach of contract should be changed. Plaintiffs disagree.

EMS acts as a credit card processor. EMS contracted with Plaintiffs Infinity Capital and John Paul Golino, d/b/a Choice ("Choice") to act as EMS's sales agent. Golino and Infinity solicited customers for EMS's credit card processing services. In return, EMS agreed to pay Choice a percentage of the processed transactions from the merchants that Choice brought to EMS. The amount EMS paid Choice each month varied based in part on the number of merchants in Choice's portfolio who processed with EMS.

On October 18, 2018, Choice sued EMS for breach of contract and related claims.[1] Following a bench trial in February 2019, the Court found both that EMS had breached its contract with Choice and that Choice had been unjustly enriched by EMS's overpayments.[2]

---
[1] Doc. 1.
[2] Doc. 59.

Case No. 1:18-cv-2422
Gwin, J.

Accounting for the unjust enrichment, the Court ordered EMS to pay Choice $5,423,541.01.[3]

In awarding this level of damages, the Court calculated the present value of Choice's residual payments over the lifespan of the portfolio by estimating the portfolio's attrition rate; that is, the rate at which merchants would discontinue using EMS to process payments, thereby ending Choice's right to receive residual payments.

In its Rule 60(b) motion, EMS requests that the Court recalculate damages using EMS's actual attrition rate instead of the estimate.[4] Responding to EMS's Rule 60(b) motion, Choice asks the court to maintain its damages award.[5]

For the reasons stated below, the Court **DENIES** EMS's motion for relief.

## I. Defendant Fails to Demonstrate Grounds for Relief.

Rule 60(b) allows courts to "relieve a party . . . from a final judgment, order, or proceeding" for several enumerated reasons, including "any other reason that justifies relief."[6] The Sixth Circuit has explained that courts "should grant relief from operation of a judgment under [this rule] when it determines in its sound discretion that substantial justice would be served."[7]

But Rule 60(b) does not allow a party to relitigate an issue "by presenting new explanations, legal theories, or proof."[8] "[C]ourts should apply Rule 60(b)(6) only in

---

[3] *Id.*
[4] *Id.*
[5] Doc. 71.
[6] FED. R. CIV. P. 60(b)(6).
[7] *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) (citing *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985)). *See also GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 372 (6th Cir. 2007).
[8] *Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."[9]

Defendant EMS requests that the Court recalculate the damages to reflect more significant customer attrition occurring within the Choice portfolio after the judgment. Defendant EMS argues for a significantly reduced damages award. EMS claims that leaving the original calculation in place "would constitute a grave injustice to EMS and would likewise result in an unjust windfall to Choice."[10] In the alternative EMS requests that the Court amend the Judgment to allow EMS to make monthly payments based on the volume of transactions in the Choice Portfolio that EMS processes each month.[11]

Choice disagrees.[12] Choice notes that "the Court's damage model was intended to assess the present value of the residuals that would have flowed to Plaintiffs but for EMS's wrongful termination of the agreement."[13] In other words, Choice says the damage award intended to measure Choice's lost compensation, not EMS's gain from breaching the contract.

As a preliminary matter, EMS's argument functionally says the Court made a mistake by assuming a 2% per month attrition rate. The parties referred to the Choice portfolio attrition rate throughout the litigation.[14] EMS did not challenge the 2% per month attrition rate at trial and EMS does not say the Court made a mistake interpreting the attrition rate

---

[9] *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).
[10] Doc. 64-1.
[11] *Id.*
[12] Doc. 71.
[13] *Id.*
[14] Doc. 52 at 8, 52-53, 223-24; Doc. 55 at 461-62, 532.

Case No. 1:18-cv-2422
Gwin, J.

evidence offered at trial. EMS cannot now use Rule 60(b)(1)[15] to challenge the attrition rate after failing to offer trial evidence that some higher attrition rate might occur.

Even if this Court considers EMS's contention within the Rule 60(b)(6) framework, the Court will not recalculate Choice's damages. EMS fundamentally misinterprets the damages' focus. The judgment sought to award the damages flowing from EMS's breach. The Court did not engage in a quantum meruit calculation of the EMS benefit from EMS's breach. The Court awarded damages to make Plaintiff Choice whole, not to measure the breach benefit flowing to EMS.

Ohio law instructs courts to "place the nonbreaching party in the position it would have been had the breaching party fully performed under the contract."[16] If it were not for EMS's breach, Choice would have presumably continued to manage its portfolio.[17] And with such management Choice would likely achieve a lower attrition rate than EMS experienced after EMS removed the most direct client contact. That EMS has been unable to retain its customers without Choice's aid is irrelevant. Thus EMS has alleged no exceptional or extraordinary circumstances warranting relief from the Court's order.[18]

## II. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to reconsider. The Court **GRANTS** Plaintiff's request for attorney's fees and costs.

---

[15] "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).

[16] *Blain's Folding Service, Inc. v. Cincinnati Insurance Co.*, 109 N.E.3d 177, 181 (Ohio Ct. App. 2018).

[17] *See* Doc. 52 at 52 ("A good agent will retain and reduce the attrition of the merchants.").

[18] EMS also raises a concern that Choice may be able to steer merchants from the Choice portfolio to other processors, allowing Choice to earn new residuals. Doc. 64-1. EMS has presented no evidence that this has occurred, however, and Choice asserts that it has refrained from engaging with these merchants. Doc. 71. Regardless, such speculation is not an exceptional circumstance warranting relief.

Case No. 1:18-cv-2422
Gwin, J.

    IT IS SO ORDERED.


Dated: September 25, 2019          *s/     James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE